**George H. CULBERTSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 63A01–1002–CR–68.

Court of Appeals of Indiana.

July 6, 2010.

Transfer Denied Sept. 9, 2010.

Steven E. Ripstra, Melissa J. Haley, Ripstra Law Office, Jasper, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

George H. Culbertson appeals his conviction following a bench trial for nonsupport of a dependent child as a class C felony.[1]

We affirm.

### ISSUE

Whether there is sufficient evidence to support the conviction.

### FACTS

Culbertson and Victoria Patton were married in August of 1979 and had three children during their marriage: Barbara, born in May of 1982; Samantha, born in December of 1983; and Mindy, born in October of 1985. Pursuant to a decree of dissolution entered on October 6, 1986, the trial court awarded custody of the children to Victoria. The trial court also entered an order in gross that Culbertson pay child

---

1. Ind.Code § 35–46–1–5.

support in the amount of $200.00 per month through the Pike County Clerk's Office, with the first payment due on October 15, 1986.

According to the child support arrearage calculation worksheet prepared by the Pike County Title IV–D Prosecutor's Office, Culbertson paid $100.00 toward child support in 1994. He made no other payments through the Clerk's Office.

From October of 1986 through July of 2003, Victoria periodically enrolled in, and received assistance from, the Temporary Assistance for Needy Families program ("TANF").[2] As of March 15, 2006, the Prosecutor's Office calculated Culbertson's total child support arrearage, including amounts owed to the State for TANF payments to Victoria, to be $44,300.00.[3]

On July 26, 2006, the State charged Culbertson with nonsupport of a dependent child as a class C felony. The trial court commenced a jury trial on May 24, 2007, but declared a mistrial after Culbertson sought to call a surprise witness and raise a "last minute defense. . . ." (App. 7). The trial court subsequently held a bench trial on October 27, 2009.

Mindy testified that she dropped out of high school during her freshman year and moved out of Victoria's residence when she was seventeen years old. Samantha testified that she dropped out of high school at the age of sixteen and subsequently moved out of Victoria's residence "right before" her eighteenth birthday. (Tr. 50). Barbara testified that she also dropped out of high school when she was sixteen years old and moved out of Victoria's residence when she was nineteen years old. All three children testified that they each received $100.00 from Culbertson after their parents' divorce.

The trial court admitted into evidence copies of chronological case summaries, showing Culbertson's convictions and sentences under numerous cause numbers. Culbertson testified that, from the date of the dissolution until the date of the trial, he had been incarcerated for a total of eight years. At no time, however, did he seek to modify his child support obligation.

On October 29, 2009, the trial court entered its order, finding, in pertinent part, as follows:

1. The defendant was a skilled carpenter and had skills to earn income to pay child support.

2. The defendant has the burden of proof to show his inability to pay child support.

3. Other than times when he was incarcerated, the defendant has failed to prove his inability to pay child support.

4. The *Becker* [c]ase, 902 N.E.2d 818 ( [Ind.] 2009), holds that new case law in *Lambert*, which allows a person who is incarcerated to have his child support reduced upon filing a petition to modify, is not retroactive prior to the date that the incarcerated parent filed his petition to modify.

5. If the incarcerated parent does not file a petition to modify while incarcerated, the court shall not, sua sponte, reduce the incarcerated parent's support obligation.

6. The defendant's obligation to pay child support starts on the date of the Decree of Dissolution, which was October 6, 1986.

2. Victoria received assistance from TANF for approximately thirteen years during the period from 1986 through 2003.

3. As of the date of the trial, the Prosecutor's Office calculated the total child support arrearage to be $47,900.00.

7. The $200.00 per month order of the Decree of Dissolution is not to be changed because of the defendant's incarceration since the defendant never filed a petition to modify requesting a modification.

8. The State has offered proof that the defendant owes child support on each child until their 21st birthday.

9. The evidence was that Barbara left her mother's residence and was not under the care or control of either parent after she turned 18 (May 14, 2000).

10. The evidence was that Samantha left her mother's residence and was not under the care or control of either parent after she turned 18 (December 11, 2001).

11. The evidence was that Mindy left her mother's residence and was not under the care or control of either parent after she turned 17 (October 9, 2002).

12. The Court has the inherent authority to terminate the defendant's obligation to pay child support as of October 9, 2002, when the last child left her mother's residence.

13. It would be improper and unconscionable for the Court to hold the defendant criminally liable for supporting his children after they left their mother's residence, and were in fact, emancipated as of the above dates.

14. Since the defendant did not request his support to be modified, the Court cannot change the amount of the support order, which shall be $200.00 per month from October 6, 1986, until October 9, 2002.

15. The evidence presented was that the defendant paid the mother $100.00, and each of the children $100.00, for a total of $400.00 child support paid.

16. ... [A]s of October 9, 2002, the defendant owed the State of Indiana the sum of $29,700.00, giving the defendant credit for the $100.00 payment he paid during 1994.

17. ... [A]s of October 9, 2002, the defendant owed the mother the sum of $7,700.00, giving the defendant credit for the $300.00 he paid directly to the children.

18. The total amount of support arrearage due is $37,400.00.

(App. 18–19). Accordingly, the trial court found Culbertson guilty as charged. Following a sentencing hearing on December 3, 2009, the trial court sentenced Culbertson to eight years, with two years suspended to probation.

### DECISION

Culbertson asserts that there is insufficient evidence to support his conviction. Specifically, he argues that he proved that he was unable to pay child support due to his numerous incarcerations. He also argues that the trial court improperly calculated the amount of child support arrearage and that he was entitled to a retroactive modification of his child support obligations due to his incarcerations.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome

every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007) (quotations and citations omitted).

Indiana Code section 35–46–1–5 provides that a "person who knowingly or intentionally fails to provide support to the person's dependent child commits nonsupport of a child," a class D felony. The offense, however, is a class C felony "if the total amount of unpaid support that is due and owing for one (1) or more children is at least fifteen thousand dollars ($15,000)." I.C. § 35–46–1–5(a).

1. *Inability to Pay*

■■■ Culbertson argues that he proved an inability to pay child support during his periods of incarceration.[4] Pursuant to subsection (d) of Indiana Code section 35–46–1–5, "[i]t is a defense that the accused person was unable to provide support."

The defendant bears the burden of proving his or her inability to pay. We will reverse this negative judgment only if the decision of the trial court is contrary to law. In assessing whether a judgment is contrary to law, we must determine if the undisputed evidence and all reasonable inferences lead to one conclusion and the trial court reached another conclusion.

*Stephens v. State,* 874 N.E.2d 1027, 1034 (Ind.Ct.App.2007) (internal citations omitted), *trans. denied.* While proof of incarceration may be offered as an affirmative

defense, it is "not an absolute bar" to a conviction for nonsupport of a dependent. *See Cooper v. State,* 760 N.E.2d 660, 666 (Ind.Ct.App.2001), *trans. denied; see also Lambert v. Lambert,* 861 N.E.2d 1176, 1177 (Ind.2007) (holding that "incarceration does not relieve parents of their child support obligations").

Here, Culbertson testified that he had been incarcerated for a total of eight years during the time from the date of the dissolution until the date of the trial in October of 2009. According to Culbertson, he served three of those eight years after his youngest child's twenty-first birthday and therefore after the child support order terminated. Culbertson further testified that he earned approximately sixty cents per day during his periods of incarceration and had no assets.

Victoria testified that Culbertson worked in construction and was a skilled carpenter. She also testified that Culbertson often worked "under the table [ ]" to avoid paying child support. (Tr. 8).

An administrator in the Prosecutor's Office testified that payroll records reflected that Culbertson was employed with two separate companies during 2001 and 2002, but "he had already quit" his employment before orders to withhold income for child support could be issued to his employers. (Tr. 26). She further testified that undeclared income would not be reflected in the payroll records.

The record shows that Culbertson was obligated to pay child support in gross in the amount of $200.00 per month for six-

---

4. We note that the trial court found that "[o]ther than times when he was incarcerated, [Culbertson] has failed to prove his inability to pay child support." (App. 17). As such, we interpret Culbertson's argument to be that the trial court should have found that

he proved he was unable to pay *any* child support, or in the alternative, that he was unable to pay the amounts required to convict him of class C felony, rather than class D felony, nonsupport of a dependent child.

teen years.[5] Even allowing for his periods of incarceration during these years, we cannot say that he adequately established an inability to pay *any* child support. Culbertson provided no evidence that he did not have any income, or means to earn income, during his periods of freedom. Thus, we cannot say that Culbertson established a defense to nonsupport of a dependent as a class D felony.

In addition, even assuming that Culbertson adequately bore his burden of proving his inability pay child support due to his incarcerations, he presented no evidence that abating his child support during these periods would have resulted in a child support arrearage of less than $15,000.00. Accordingly, we cannot say that Culbertson established a defense to nonsupport of a dependent as a class D felony.

Finally, at no time did Culbertson seek to modify his child support obligation due to an inability to pay. We therefore find that Culbertson failed to meet his burden of proving his inability to pay child support.

## 2. *Arrearage Calculation*

■ Culbertson asserts that the trial court abused its discretion in failing to proportionally reduce the amount of child support owed as each child became emancipated. Culbertson, however, cites to no authority to support his position and fails to make a cogent argument, resulting in waiver. *See Lyles v. State,* 834 N.E.2d 1035, 1050 (Ind.Ct.App.2005) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied.*

■ Waiver notwithstanding, we find that Culbertson's argument fails. "[W]hen a court enters an order in gross, that obligation similarly continues until the order is modified and/or set aside, or *all* the children are emancipated, or *all* of the children reach the age of twenty-one." *Whited v. Whited,* 859 N.E.2d 657, 661 (Ind.2007).

Here, the decree of dissolution ordered Culbertson "to pay support for the children of the Parties in the amount of Two Hundred Dollars ($200) per month ..." (State's Ex. 1). The language of the decree of dissolution unequivocally ordered undivided child support; at no time did Culbertson seek to modify his court-ordered child support. Thus, we find no abuse of discretion in the trial court's calculation of Culbertson's child support arrearage based on a date when all of the children were deemed emancipated. Accordingly, we find the evidence sufficient to support Culbertson's conviction as a class C felony.

## 3. *Retroactive Modification*

■ Culbertson further asserts that he was entitled to retroactive modification of his child support obligation; therefore, he contends that the evidence is insufficient to support his conviction for nonsupport of a dependent child as a class C felony. We disagree.

In *Lambert,* the Indiana Supreme Court held that "in determining support orders, courts should not impute potential income to an imprisoned parent based on pre-incarceration wages or other employment-related income, but should rather calculate support based on the actual income and assets available to the parent." 861 N.E.2d at 1177. In *Clark v. Clark,* 902 N.E.2d 813 (Ind.2009), the Indiana Supreme Court further held that incarcera-

---

**5.** Sixteen years elapsed from October of 1986, the date of the dissolution, until October 2, 2002, the date the trial court terminated Culbertson's obligation to pay child support.

tion may constitute a substantial change in circumstances justifying modification of an *existing* child support obligation.

In *Becker v. Becker,* 902 N.E.2d 818 (Ind.2009), the Indiana Supreme Court addressed the effective date of a modification of child support based on changed circumstances due to incarceration, reiterating as follows:

> A trial court has discretion to make a modification of child support relate back to the date the petition to modify is filed, or any date thereafter. "The general rule in Indiana is that retroactive modification of support payments is erroneous if the modification relates back to a date earlier than the filing of a petition to modify." And Indiana courts have long held that, "after support obligations have accrued, a court may not retroactively reduce or eliminate such obligations." The modification of a support obligation may only relate back to the date the petition to modify was filed, and not an earlier date....

*Becker,* 902 N.E.2d at 820 (internal citations omitted).

Finding "[n]othing in *Lambert* or *Clark* suggests a contrary rule for modifications due to incarceration," the *Becker*-court held that "*Lambert* and *Clark* do not apply retroactively to modify child support orders already final, but only relate to petitions to modify child support granted after *Lambert* was decided." *Id.* at 820–21. Thus, a "trial court only has the discretion to make a modification of child support due to incarceration effective as of a date no earlier than the date of the petition to modify." *Id.* at 821.

In this case, Culbertson did not petition for a modification of his child support obligation. We therefore cannot say that the trial court abused its discretion in not retroactively modifying Culbertson's child support obligation.[6]

Culbertson, however, argues that by declining to allow defendants such as himself to retroactively modify final child support orders, "the Court is moving away from the principles relied on in deciding *Lambert* and *Clark.*" Culbertson's Br. at 12. He maintains that "at least in a criminal prosecution, a defendant [should] be afforded the opportunity to abate, or reduce to a realistic amount, the support to be paid." *Id.* at 13.

 We first note that "it is not this court's role to reconsider or declare invalid decisions of our supreme court." *Horn v. Hendrickson,* 824 N.E.2d 690, 694 (Ind.Ct. App.2005). We are bound by our Supreme Court's decisions, and its precedent is binding until it is changed by the supreme court or legislative enactment. *Id.* Hence, we decline Culbertson's invitation to modify his child support obligation.[7]

Furthermore, as previously noted, even if we were to abate or modify his child support obligations, Culbertson has made no showing that it would result in an unpaid child support obligation of less than $15,000.00 and therefore a reduction of the

---

6. Even if Culbertson were to petition for a modification of child support, the earliest it could become effective is the date of his filing the petition. *See* 902 N.E.2d at 821.

7. We note that Culbertson argues that not affording a defendant the opportunity to abate or modify his or her child support obligation renders any defense for being unable to pay "virtually meaningless." Culbertson's Br. at

13. We disagree. Although "[i]t is against public policy to allow support payments to abate based upon the willful and unlawful acts of the obligor," the fact remains that a defendant may offer evidence of his or her incarceration as a defense for failing to pay unabated child support. *See Dishmon v. State,* 770 N.E.2d 855, 858 (Ind.Ct.App.2002), *trans. denied.*

nonsupport of a dependent child conviction to a class D felony.

Affirmed.

BAKER, C.J., and CRONE, J., concur.