Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JENNIFER HINKEBEIN CULOTTA**
Culotta & Culotta, LLP
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL AGUILAR, III, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A05-1212-CR-665 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable William E. Alexa, Judge
Cause No. 64D02-0909-FA-9559

**August 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Daniel Aguilar III was convicted of two counts of Class C felony child molesting. He was sentenced to four years—two years executed and two years suspended to probation—on each count, to run consecutively. On appeal, Aguilar contends that there is not sufficient evidence to sustain his convictions, the trial court erred in reading a jury instruction that contained the charging information, and the trial court erred in not specifying the conditions of his probation. Also, he asks this Court to adopt a new rule that requires corroboration of claims of sexual abuse. We find that Aguilar's convictions are supported by sufficient evidence and the trial court did not err in reading the jury instructions. We decline to adopt his proposed rule; however, we do find that the trial court erred in not specifying Aguilar's conditions of probation. We therefore affirm and remand to specify probation conditions.

## Facts and Procedural History

From 1999 to 2005, Christina C.-C. lived with her then-husband Aguilar, Christina's two daughters—K.M., born in 1993, and C.M., born in 1997—and Christina and Aguilar's two younger sons. The couple separated in 2006, and after Aguilar's move to California, their divorce became final in 2007.

Beginning in kindergarten and continuing through the third or fourth grade, C.M. was molested by Aguilar. He put his hands both inside and outside C.M.'s clothes and touched her vagina. Aguilar also compelled C.M. to touch his penis. The abuse happened when they were alone or sometimes in the presence of her sister K.M.

2

K.M. was also molested by Aguilar from the age of seven and continued until she entered the sixth grade. Aguilar put his hands both inside and outside K.M.'s clothes, touched her vagina, and compelled her to touch his penis.

After attending a church event in 2009, where a girl shared her personal sexual-abuse story with C.M., C.M. wrote her mother the following letter:

> Dear Mom,
> When I was little me and [K.M.] got raped (I don't know how to spell the other words) by Danny [Aguilar]. . . . It started when I was 5 or 6 years old, but I don't know when it started with [K.M.].

Tr. p. 160; Exhibit 2.

Christina reported the abuse to the Portage Police Department after discussing the accusations with C.M., K.M., and K.M.'s father, M.M. Appellant's App. 111-12; Tr. p. 179, 285, 293-97. K.M. recalled that she was "scared," "shocked," "embarrassed," and "felt uncomfortable" after learning that C.M. had disclosed the abuse. Tr. p. 207-08. K.M.'s statement to the police led them to investigate another alleged victim, J.C., who was a family friend.

In September 2009, the State charged Aguilar with: Count I, child molesting as a Class A felony for "[engaging] in deviate sexual conduct with K.M."; Count II, child molesting as a Class A felony for "[engaging] in sexual intercourse and/or deviate sexual conduct with C.M."; Count III, child molesting as a Class A felony for "[engaging] in deviate sexual conduct with J.C."; Count IV, child molesting as a Class C felony for fondling or touching K.M. with the intent to arouse or satisfy his sexual desires; and

3

Count V, child molesting as a Class C felony for fondling or touching C.M. with the intent to arouse or satisfy his sexual desires. Appellant's App. p. 8-10.

At trial, C.M. was fifteen years old and K.M. was nineteen years old. C.M. testified that Aguilar touched her vaginal area and made her touch his penis and that he would ejaculate. Tr. p. 148-57. She also testified that no one else was present in the room while the molestations occurred, but on at least one occasion K.M. was present. *Id.* at 164, 172, 178.

K.M. testified to similar patterns of abuse. *Id.* at 192-96. She recalled a specific incident:

> I remember this one incident. I forgot which house it was, but I think it was like the first time he had me – like he would just talk to me about masturbating him. I think that's the right way to say it. He would just talk to me about how to do it and what to do; and then he had me do it, and then he would ejaculate from that.

*Id.* at 195-96.

C.M., K.M., and J.C. testified that Aguilar performed oral sex on each of them. J.C. said the abuse occurred during the summer that she spent time in the Aguilar household when she was eleven or twelve years old. *Id.* at 237-38. At trial, Aguilar objected to Jury Instruction No. 1.07, which contained the investigating officer's affirmation in the charging information, on the basis that it created an impermissible "vouching" to the State. The court overruled his objection.

The jury found Aguilar guilty of Counts IV and V, the fondling counts involving C.M. and K.M., but not guilty of Counts I, II, and III, the counts relating to the alleged deviate sexual conduct with K.M., C.M., and J.C. The trial court sentenced Aguilar to

4

consecutive four-year terms on Counts IV and V, with two years served in the Indiana Department of Correction and two years suspended to probation. Aguilar now appeals.

## Discussion and Decision

Aguilar contends that the evidence is insufficient to uphold his convictions for Class A felony child molesting, and the trial court erred in reading the jury instruction that contained the investigating officer's affirmation in the charging information. He also notes, and the State agrees, that the trial court erred in not specifying the terms of probation.

## I. Sufficiency of the Evidence

Aguilar argues that the evidence is insufficient to sustain his Class C felony child molesting convictions involving C.M. and K.M. Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. *Lainhart v. State*, 916 N.E.2d 924, 939 (Ind. Ct. App. 2009). We will consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* A conviction may be based upon circumstantial evidence alone. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

Aguilar contends that there is insufficient evidence to support his convictions because (A) the testimony of C.M. and K.M. never identified a specific incident of

fondling and, therefore, the State presented only generic evidence, and (B) C.M.'s and K.M.'s testimony was incredibly dubious.

## A. Generic Evidence

Aguilar first contends that the evidence is insufficient because there was no "evidence of a specific incident" of child molestation. Appellant's Br. p. 7. He argues that neither C.M. nor K.M. specifically described "any particular incident of touching" and the State presented only "generic evidence" that the molestations happened on multiple occasions over a period of time. *Id*. at 11.

It is well settled that time is not of the essence in the crime of child molesting. *Barger v. State*, 587 N.E.2d 1304, 1307 (Ind. 1992). This is so because "it is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases." *Id*. Our Supreme Court recognizes that a child may be victimized by "'an abuser residing with the child . . . [who] perpetuate[s] the abuse so frequently . . . that the young child loses any frame of reference in which to compartmentalize the abuse into distinct and separate transactions'" and therefore can only give "'generic evidence'" of a defendant's conduct. *Baker v. State*, 948 N.E.2d 1169, 1174 (Ind. 2011) (quoting *R.L.G. v. State*, 712 So. 2d 348, 356 (Ala. Crim. App. 1997)).[1] The victim's "generic testimony" may describe a pattern of

---

[1] To support his argument that the "generic evidence" is insufficient to support his convictions, Aguilar cites *Baker*. *Baker* provides that when the State relies on evidence of "undifferentiated or generic occurrences" of molestation, "the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged." 948 N.E.2d at 1177. However, Aguilar did not ask for a unanimous jury instruction; therefore, this issue is waived.

abuse ("every time mama went to the store") rather than specific incidents ("after the July 4th parade"). *Id.*

Here, C.M. and K.M. described various patterns of abuse. C.M. testified that when compelled to fondle Aguilar, he would ejaculate "on [her] stomach and then he just wiped it off." Tr. p. 156-57. Her older sister K.M. testified that the molestation "would always happen like when [her] mom was at work. He never did it when anyone was around." *Id.* at 193. She also testified that "he would persuade [her] into just thinking that oh, like, maybe this is okay." *Id.* at 196. A lack of perfect clarity in C.M.'s and K.M.'s trial testimony does not make the evidence insufficient as a matter of law. C.M. was fifteen years old and K.M. was nineteen years old at the time they testified, and their testimony concerned events that occurred over seven years earlier.

### B. Incredibly Dubious

Aguilar next argues that C.M.'s and K.M.'s testimony should be disregarded because it was incredibly dubious. Under the incredible-dubiosity rule, appellate courts may impinge upon a trier of fact's function to judge the credibility of a witness when confronted with "inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). The incredible dubiosity rule is limited to cases where a single witness presents "inherently contradictory testimony that is equivocal or coerced and there is a complete lack of circumstantial evidence of guilt." *Whedon v. State*, 765 N.E.2d 1276, 1278 (Ind. 2002). "Application of this rule is rare and the standard to be applied is

whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love*, 761 N.E.2d at 810.

In support of his argument that the victims' testimony was incredibly dubious, Aguilar lists inconsistencies in C.M.'s and K.M.'s testimony, both internally and between each other.[2] He also argues that the testimony ran counter to human experience, there was no corroborating physical evidence, and the jury found him not guilty on Counts I and II, which also related to C.M. and K.M. Appellant's Br. p. 11-18. These are not valid bases for deeming C.M.'s and K.M.'s testimony incredibly dubious.

He cites minor inconsistencies in C.M.'s and K.M.'s testimony as revealing the dubious nature of their story. C.M. testified that the molestations occurred more than fifteen times and later testified that they happened "a couple times a month." Tr. p. 150. Also, she could not remember whether Aguilar's penis was erect during the molestations. At trial, K.M. testified that Aguilar ejaculated during the molestations, but during cross examination she admitted that during the deposition she said he never ejaculated. Aguilar also argues that despite their "close relationship," K.M. never told her mother about the molestations and this is counter to human experience. Appellant's Br. p. 16. The events described by the sisters are not inherently improbable nor do they run counter to human experience. Moreover, C.M.'s and K.M.'s testimony, while inconsistent at times, was not incredible.

As for the lack of physical evidence, we note that it is not uncommon for victims of child abuse to delay reporting the molestation, and such delay may result in a lack of

---

[2] Aguilar also argues that the testimony of J.C. was incredibly dubious; however, he was acquitted on the charge related to her, and therefore, we will not discuss her testimony.

physical evidence. The molestations here happened several years before they were reported to the authorities.

As for any inconsistencies between C.M.'s and K.M.'s testimony, contradictions between the testimony of multiple witnesses is not within the scope of an incredible dubiosity review. *Stephenson v. State*, 742 N.E.2d 463, 497 (Ind. 2001). As such, any inconsistencies in the testimony of multiple witnesses goes to the weight and credibility of the witnesses' testimony and do not render the testimony incredible. *Id*. "It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve." *Ferrell v. State*, 746 N.E.2d 48, 51 (Ind. 2001). "If the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb it." *Id*.

Here, the incredible dubiosity rule is not applicable because C.M. and K.M. unequivocally testified that Aguilar touched their vagina and forced them to touch his penis. They never deviated from this testimony. Aguilar's argument is nothing more than an invitation for this Court to judge the credibility of the witnesses, which we decline to do. The jury, as trier of fact, believed C.M.'s and K.M.'s testimony, which was sufficient to support a guilty verdict for Class C felony child molesting, and we decline to impinge on the jury's credibility determinations. We therefore affirm Aguilar's convictions for Class C felony child molesting. *See, e.g.*, *Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010) (holding that the testimony of the seven-year-old victim was not incredibly dubious and affirming the defendant's child molesting conviction), *reh'g denied*, *trans. denied*; *Surber v. State*, 884 N.E.2d 856, 869 (Ind. Ct.

9

App. 2008) (holding that the testimony of six-year-old victim was not incredibly dubious despite some inconsistencies, and that such inconsistencies are appropriate to the circumstances presented, the age of the witness, and the passage of time between the incident and the time of her statements and testimony), *trans. denied*.

### C. Adopting New Rule

Next, Aguilar argues that "[i]t is time for Indiana in this day and age" to "adopt a rule requiring corroboration of claims of sexual abuse." Appellant's Br. p. 5, 18. In making this argument, Aguilar relies on Judge Baker's dissenting opinion in *Leyva v. State*, which proposed "that it is time to consider whether we should require corroborating evidence when these type of offenses are supported only by the testimony of a single witness." 971 N.E.2d 699, 705 (Ind. Ct. App. 2012) (Baker, J., dissenting), *trans. denied*. The dissent explains that "[w]ith the advent of modern technology, including DNA testing and analysis, it is not unreasonable to require some form of corroborating evidence before convicting a defendant when the sole witness is the victim." *Id*. at 706.

We decline Aguilar's invitation to adopt the dissent in *Leyva* for several reasons. Sexual abuse is often uncorroborated because the abuse takes place when the offender and victim are alone. When fondling is the extent of the sexual abuse, like in this case, typically there is no corroborating DNA evidence. Furthermore, where the victim is a child, and the abuser is an adult, the authoritative relationship between the offender and the victim makes it common for the child victim to delay reporting. With the passage of time, the chance of finding any physical evidence decreases. In addition, we decline to

10

adopt the dissent in *Leyva* because it does not propose to reach all criminal acts that allow conviction when the sole witness is the victim and there is not any corroborating evidence. Allowing for uncorroborated evidence in crimes of burglary and robbery but not in sexual abuse would produce an exception that we are not willing to create.

Moreover, as our Supreme Court has recently restated, "[a] conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012); *see also Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012) ("The testimony of a sole child witness is sufficient to sustain a conviction for molestation."). Despite Aguilar's challenge to his convictions resting on C.M.'s and K.M.'s uncorroborated testimony alone, our Supreme Court's precedent is binding until it is changed by the Court or legislative enactment. *Culbertson v. State*, 929 N.E.2d 900, 906 (Ind. Ct. App. 2010), *trans. denied*.

## II. Jury Instruction

Aguilar next contends that the trial court improperly instructed the jury by including the affirmation of the investigating officer in the charging informations. Jury Instruction No. 1.07 provides:

> Detective Sergeant Joe Reynolds, Portage Police Department, swears under the penalties of perjury as specified under I.C. 35-44-2-1 that the following representations are true: that Daniel Aguilar . . . performed or submitted to fondling . . . with the intent to arouse or satisfy his own sexual desires.

Appellant App. p. 82-86 (charging informations for all five counts). Aguilar asserts that the instruction was erroneous because "the Court put its stamp of approval on the

11

statement of a police officer, who, in the charging information, accused [Aguilar] of child molesting, and swore under pains and penalties of perjury that his accusations were true." Appellant's Br. p. 26.

In resolving this issue, we review the giving of a jury instruction for an abuse of discretion. *See Benefiel v. State*, 716 N.E.2d 906, 914 (Ind. 1999). The purpose of jury instructions is to inform the jury of the law applicable to the facts of the particular case. *Clark v. State*, 732 N.E.2d 1225, 1230 (Ind. Ct. App. 2000). Instructions "are to be read together as a whole and not as single units, and a single instruction need not contain all the law applicable to the case." *Hurt v. State*, 570 N.E.2d 16, 18 (Ind. 1991). Additionally, in reviewing a challenge to a jury instruction, we must consider "whether the instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions." *Sherwood v. State*, 702 N.E.2d 694, 698 (Ind. 1998). An improper instruction will merit reversal only if it "so affects the entire charge that the jury was misled as to the law in the case." *White v. State*, 547 N.E.2d 831, 835 (Ind. 1989).

The court instructed the jury that Jury Instruction No. 1.07 was "merely the charging information itself," that it did not "give any credibility to a police officer," and it was "simply the method for bringing a defendant before the court." Tr. p. 133. Furthermore, the jury was instructed that the charges and the arrest of Aguilar should not be considered "as any evidence of guilt." *Id.* at 93. The jury was told to consider the instructions as a whole and that they were the exclusive judges of the facts as they found

12

them. *Id*. at 114, 129. Therefore, including the officer's affirmation in the charging informations did not so affect the entire charge that the jury was misled as to the law in the case.

### III. Probation Conditions

Finally, both Aguilar and the State note that the trial court did not issue any terms of probation. Indiana Code section 35-38-2-1(a) provides that when the trial court "places a person on probation," it "shall specify in the record the conditions of the probation."

The trial court sentenced Aguilar to consecutive four-year terms, with two years served in the DOC and two years suspended to probation. Appellant's App. p. 176-77. Aguilar was also ordered to register as a sex offender and undergo HIV testing. *Id*. at 177. But because the trial court did not specify in the record the conditions of Aguilar's probation, we therefore remand this case to the trial court so that it can specify in the record the terms of his probation.

Affirmed in part and remanded in part.

KIRSCH, J., and PYLE, J., concur.