## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 11 2015, 9:06 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark Small
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jordan Gray,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 11, 2015

Court of Appeals Case No.
49A05-1409-CR-424

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49G01-1306-MR-41202

**Robb, Judge.**

## Case Summary and Issues

[1] Jordan Gray appeals following his jury trial for murder, a felony; attempted murder, a Class A felony; and carrying a handgun without a license, a Class A

misdemeanor. Gray argues that statements made by a witness to police were admissible as present sense impressions and statements against interest, the jury was not properly instructed that it must find a specific intent to kill in order to convict Gray of attempted murder as an accomplice, and the trial court improperly denied his criminal recklessness instruction as an inherently lesser-included offense of attempted murder. Concluding that the trial court properly excluded inadmissible hearsay, any error in its attempted murder as an accomplice instructions was harmless, and the trial court properly rejected Gray's proffered criminal recklessness instruction, we affirm.

# Facts and Procedural History

[2] On June 11, 2013, eleven-year-old "Punney" Williams and ten-year-old "Bam," a member of the Tate family, argued over an iPod that Bam felt Punney had stolen from him. Punney maintained that Bam had lost the device in a bet. Two female members of the Tate family and two of their female friends went to the Williams home to retrieve the iPod. Several members of the Williams family were present, including Damien Williams, Dazion Dulin, and Tron Harris. The members of the Tate and Williams families all knew one another from having grown up in the neighborhood together.

[3] Punney refused to return the iPod. A verbal altercation broke out which escalated into a physical fight. Male members of the Williams family fought with the females of the Tate group. Damien attempted to break up the fighting. A crowd of around thirty-five youths filled the street in front of the Williams

home. The police arrived, and the crowd dispersed. No one involved in the fight wished to press charges, so the police left.

[4] The Tate group went to a nearby home located on 24th Street between Guilford and Winthrop Avenues. The Tate home sat on the corner of 24th Street and the alley that went through the block. One of the girls called her step-brother, Jamar Minor, and told him about the fight. Minor asked his friend Gray to give him a ride to the Tate home. Minor and Gray both armed themselves with handguns. Gray borrowed his mother's car and drove Minor to the Tate home, where they parked across the street in front of a white van. Gray and Minor sat in their car for a short time before driving away. They returned to the same parking spot five minutes later and spoke to the girls about the fight. Gray and Minor remained seated in their car after speaking to the girls.

[5] Damien, Damien's cousin Leo, Dulin, and Harris learned of a rumor that someone was being sent by the Tates to "shoot up" the Williams home. Transcript at 483. The Williams boys decided to go to the Tate home to talk to the girls, hoping to prevent any further violence. The boys were joined on the way by their friend Eric Taylor. None of the Williams boys was armed. They walked along the southern portion of the same alley that abutted the Tate home. As they exited the alley on 24th Street, they could see the Tate home across the street on the west corner of the alley. The boys did not see Gray and Minor seated in their car because Gray and Minor had ducked down inside. None of the boys knew Gray or Minor.

[6]     The boys approached the Tate home and asked one of the girls outside if the iPod fight was truly settled.  The girl assured the boys that the fight was over and that no one was coming over to shoot at the Williams home.  The boys then started to walk west down 24th Street towards Guilford.  The boys had all passed Gray and Minor's car when someone in the car spoke.  The group of boys turned to look at the car.  Gray and Minor jumped from their car and began shooting at Damien and Taylor.  Damien, who was in the middle of the street, was hit immediately and fell on his hands.  Damien was shot in his back, abdomen, and left thigh.

[7]     Taylor and Leo ran west down 24th Street away from the shooting.  Taylor was shot in the leg as he ran on the north sidewalk of 24th Street.  Taylor crawled around the corner to his former wrestling coach's house on Guilford and was dragged inside to safety.  Harris and Dulin ran around the southwest corner of 24th Street and went southbound on Guilford.  Gray and Minor shot at least sixteen bullets before fleeing in their car.  The wrestling coach and Harris independently called 9-1-1.  Damien died from the fatal wounds he received to his abdomen and back.  Forensic testing later revealed that the fatal wounds were each inflicted by a different gun.  Taylor required surgery to place a metal rod in his leg from his kneecap to his ankle.

[8]     Investigators found a fully-loaded, but not fired, pistol underneath the white van that was parked behind Gray and Minor.  No DNA or fingerprints were found on the pistol.  Investigators also found bullet holes on the side of the wrestling coach's home that faced 24th Street.  A bullet hole was found in a car

parked along the southwesterly path of Harris and Dulin's flight down 24th Street. Clusters of spent bullets and cartridge casings were found in the immediate proximity of where Gray and Minor had been parked and to the east of where they had been parked.

[9] The State charged Gray and Minor with murder for the death of Damien, attempted murder for the shooting of Taylor, and carrying a handgun without a license. The State also charged Gray and Minor with a sentence enhancement for using firearms in the commission of the offenses. Gray and Minor were tried together. Through motions before trial and during trial, the co-defendants sought the admission of Dulin's statement to police that Dulin knew Damien "had a gun on him" and that the reason Dulin knew this was that "he said it." Defendant's Exhibit AA at 9. The trial court excluded the evidence as inadmissible hearsay. The trial court did not instruct the jury that it must find that the co-defendants had the specific intent to kill Taylor in order to find either defendant guilty of attempted murder as an accomplice. The trial court also refused to give defendants' proffered instruction on criminal recklessness as a lesser-included offense of attempted murder.

[10] The jury found Gray and Minor guilty of murder, attempted murder, and the carrying charges. The co-defendants waived trial by jury on the enhancement, and the trial court found that the State proved the elements of the enhancement beyond a reasonable doubt. The trial court sentenced Gray to an aggregate

sentence of seventy years. Gray now appeals his convictions for murder and attempted murder.[1] Additional facts will be added as necessary.

# Discussion and Decision[2]

## I. Exclusion of Dulin's Statements

### A. Standard of Review

[11]    "The trial court has inherent discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse of that discretion." *Jones v. State*, 780 N.E.2d 373, 376 (Ind. 2002). An abuse of discretion occurs if the trial court's ruling is against the logic and effect of the facts and circumstances before the court. *Amos v. State*, 896 N.E.2d 1163, 1168 (Ind. Ct. App. 2008), *trans. denied*.

### B. Hearsay

[12]    Dulin reported to police after the shootings that he knew Damien "had a gun on him" because "[Damien] said it." Def. Ex. AA at 9. Gray sought the admission of these statements to further his self-defense theory and for impeachment purposes. Gray argues that the trial court abused its discretion

---

[1] Minor also appealed, raising the same issues raised by Gray here. On June 10, 2015, another panel of this court issued its opinion affirming Minor's convictions. *Minor v. State*, No. 49A02-1409-CR-628, slip op. at *7 (Ind. Ct. App. June 10, 2015).

[2] Neither party's brief was particularly helpful to our review of this case. We expect both parties to tender briefs that are commensurate with the gravity of this murder and attempted murder case.

when it deemed Dulin's statements to police to be inadmissible hearsay. Hearsay is a statement not made by the declarant while testifying at the trial or hearing that is offered into evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally inadmissible. Evid. R. 802. However, hearsay may be admissible if it qualifies for an exception to the hearsay rule. Evid. R. 803, 804. If a hearsay statement itself contains hearsay, each layer of hearsay must qualify for an exception to the hearsay rule in order to be admissible. *Amos*, 896 N.E.2d at 1168; *see also* Evid. R. 805.

### 1. Present Sense Impression

[13] Gray contends that the evidence at issue was admissible as a present sense impression. Indiana Evidence Rule 803(1) provides for the admission of hearsay if the statement describes or explains an event or condition during or immediately after its occurrence and if the statement is based upon the declarant's perception of the event. *Amos*, 896 N.E.2d at 1168. The admissibility of such statements "is based on the assumption that the lack of time for deliberation provides reliability." *Mack v. State*, 23 N.E.3d 742, 755 (Ind. Ct. App. 2014) (quoting 13 Robert Lowell Miller, Jr., Ind. Prac. Ser. § 803.101 at 802 (3d ed. 2007)), *trans. denied*.

[14] The facts of *Mack* are instructive for our analysis. Police were conducting an investigation of a counterfeit currency operation run by Mack. 23 N.E.2d at 747-48. A confidential informant wore a transmitting and recording device into Mack's home. The informant conversed with Mack and left. The informant returned to the police and "a few minutes later" described a conversation he

had with Mack regarding the purchase of a material required for counterfeiting currency. *Id*. Apparently, this conversation was not recorded or received by the officers contemporaneously through the transmitting device. All in all, up to thirteen minutes had elapsed between Mack speaking with the informant and the informant sharing Mack's statements with the police. This court held that the informant's statements to police were not admissible as a present sense impression because they were not made contemporaneously with the event described or immediately thereafter. This court noted that thirteen minutes "is ample time for a declarant to deliberate and possibly fabricate a statement, especially where the declarant knows officers are looking for evidence of a particular type of crime and the declarant himself has been implicated in the commission of that crime." *Id*. at 755.

[15] Initially, we note that, contrary to Gray's argument on appeal, the evidence at issue is hearsay within hearsay. The first layer of hearsay is Damien's conversation with Dulin. The second layer of hearsay is Dulin's statements to police about what Damien told him. Thus, it is necessary for each layer of hearsay to qualify for an exception in order to be admissible. *Amos*, 896 N.E.2d at 1168.

[16] Here, Dulin told police that he knew Damien "had a gun on him" because "he said it." Def. Ex. AA at 9. Even if these vague statements sufficiently described a condition or event, there is nothing in the record to indicate when Dulin had his conversation with Damien. Thus, there is no foundation for concluding that Damien's statements were made contemporaneously with or

immediately after Damien's possession of the gun. Furthermore, police were dispatched to the scene of the shooting at around 8:30 p.m. Dulin's interview with police began at around 2:00 a.m., or more than five and one-half hours after Dulin had been with Damien. Even if Damien's statements to Dulin were contemporaneous with the condition they described and were made right before the shooting, following *Mack*, too much time had passed between Damien's conversation with Dulin and Dulin's interview with police for Dulin's statements to qualify as a present sense impression.

[17]     The case cited by Gray on appeal, *Amos*, is readily distinguishable.[3] In that case, Amos' girlfriend, Keyonia, was speaking on the telephone to Lavonn when Keyonia received a call from Amos. Keyonia put Lavonn on hold to speak to Amos, who told Keyonia that he would kill her if she did not give him some money. After Keyonia ended her call with Amos, she immediately returned to her call with Lavonn and told Lavonn what Amos had said. This court held that Keyonia's statements to Lavonn were made immediately after her conversation with Amos and, therefore, qualified as a present sense impression. Unlike *Amos*, here, we do not know when Damien spoke to Dulin, but we do know that Dulin did not speak to police immediately after speaking to Damien. Because neither Damien's conversation with Dulin nor Dulin's

---

[3] In as much as Gray argues that *Amos* shows that the evidence at issue here is not double hearsay, he is mistaken. The first layer of hearsay in *Amos* was Amos' statements to Keyonia. Those statements were offered against Amos at his trial for murder and, thus, were admissible as the statements of a party opponent under Evidence Rule 801(d)(2)(A). Damien and Dulin were not party opponents.

statements to police were present sense impressions, the trial court did not abuse its discretion when it excluded them.

### *2. Statement Against Interest*

[18] Gray also argues that the evidence is admissible as a statement against interest. That exception to the hearsay rule requires that the declarant be unavailable and that the statement be one that

> a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability.

Evid. R. 804(b)(3). In order to qualify under the exception, the statement must be incriminating on its face. *Jervis v. State*, 679 N.E.2d 875, 878 (Ind. 1997).

[19] Gray argues that Damien's statement to Dulin about a gun was a statement against interest because it exposed Damien to prosecution for possession of a handgun without a license. However, there is nothing facially incriminating about Damien's statements to Dulin. It is necessary to go outside of the statement in order to make any argument that Damien implicated himself. The statement itself does not inform as to Damien's age, felony status, license status, or other fact that would render Damien's possession of a handgun unlawful.

[20] In addition, as noted above, each layer of hearsay at issue here must qualify for an exception to the hearsay rule in order for it to be admissible. *Amos*, 896 N.E.2d at 1168. Dulin's statement to police does not qualify as a statement against interest because, although Damien was not available to testify at trial,

Dulin was available[4] and, in fact, did testify.  Apart from Dulin's lack of unavailability, Dulin's statement to police was not incriminating on its face.  Dulin's report to police that he knew that Damien was armed does not incriminate Dulin in any criminal enterprise.  Even if it did, there is no indication that Dulin was aware that his statements to police potentially exposed him to any criminal charges, something that would have been necessary to render his statement reliable.  *Beasley v. State*, 30 N.E.3d 56, 66-67 (Ind. Ct. App. 2015) (noting that the rationale for this exception "fails if the declarant did not believe the statement *was* against his or her interest." (emphasis in original)).  Because the hearsay evidence at issue did not qualify as a statement against interest, the trial court did not abuse its discretion when it excluded it.

# II. Jury Instructions

## A. Standard of Review

Our standard of review for jury instructions is well-settled: we review a trial court's instructions to the jury for an abuse of discretion.  *Isom v. State*, 31 N.E.3d 469, 484 (Ind. 2015).  "An abuse of discretion arises when the instruction is erroneous and the instructions taken as a whole misstate the law or otherwise mislead the jury."  *Id.* at 484-85.  In addition, not all instructional

---

[4] Evidence Rule 804(a)(3) provides that a witness is "unavailable" if he testifies that he does not remember making the statements.  However, at trial, Dulin categorically denied ever having made the statement at issue.  The trial court allowed defense counsel to impeach Dulin extensively regarding the fact that Dulin denied making certain statements that appeared in the transcript of his interview with police.

error is reversible error. Before a defendant is entitled to reversal, he must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Vaughn v. State*, 13 N.E.3d 873, 886 (Ind. Ct. App. 2014), *trans. denied*.

## B. Attempted Murder

[22] The trial court's instructions did not specify that the jury must find that Gray acted with the specific intent to kill Taylor in order to convict Gray of attempted murder as an accomplice. Gray contends that the trial court's failure to properly instruct the jury regarding the *mens rea* required to convict him of attempted murder as an accomplice was reversible error.[5] We do not agree.

[23] Gray relies upon our supreme court's decision in *Rosales v. State*, 23 N.E.3d 8 (Ind. 2015), in support of his argument. Rosales was charged with attempted murder. In its final instructions to the jury, the trial court properly instructed the jury on the elements of attempted murder. It also instructed the jury on accomplice liability but did not include in that instruction a recitation that the jury must find that Rosales acted with specific intent to kill his victim in order to convict him of attempted murder as an accomplice. Because the jury was given general verdict forms, it was impossible to know whether Rosales had been convicted of attempted murder as a principal or as an accomplice. In

---

[5] The State argues that Gray waived this claim by failing to tender his own accomplice liability instructions. However, because the State tendered the accomplice liability instruction, to which Gray objected, Gray was not required to tender his own instruction in order to preserve this issue for appeal. *See Fry v. State*, 748 N.E.2d 369, 373 (Ind. 2001). Accordingly, we address his claim as one of prejudicial error, not fundamental error.

addition, in its closing arguments the State argued both theories of liability and relied heavily on the improper instruction when it repeatedly told the jury that it could convict Rosales without finding a specific intent to kill. The supreme court held that, even though there was strong evidence of Rosales' guilt as a principal and of his intent to kill, the instructional error was fundamental, reversible error because of the State's repeated emphasis on the improper instruction.

[24] Here, the State made it clear in its closing arguments that specific intent was required for the attempted murder charge and that it sought to convict both Gray and Minor as principals in the attempted murder of Taylor. For example, the State argued, "so the defendants . . . intentionally attempted to commit the crime of murder against another person – Eric Taylor . . . ," tr. at 727, and "[l]et's talk for a moment about the specific intent of attempt [sic] murder and how we know that it was both boys [sic] intention. . . ," *id.* at 772. Defense counsel also emphasized to the jury that specific intent was required when he asked the jury, "[w]as there a specific intent to kill Eric Taylor because that's the attempt [sic] murder." *Id.* at 761. Therefore, in contrast to *Rosales*, the State did not repeatedly inform the jury that no specific intent was required for attempted murder.

[25] Furthermore, there was ample evidence that Gray acted with the specific intent to kill Taylor. Gray shot either seven or nine times that day. Taylor testified that Gray fired multiple shots at him. Bullet holes were found in the side of the house where Taylor sought refuge. Less evidence than this has been held

sufficient to show specific intent to kill for attempted murder. *See, e.g.*, *Fuentes v. State*, 10 N.E.3d 68, 75 (Ind. Ct. App. 2014) (finding specific intent to kill where officer testified that Fuentes pointed gun at him and that the officer heard a shot, even though officer did not see Fuentes fire at him), *trans. denied*. Under the circumstances of this case, we are confident that the jury was not misled and that Gray's substantial rights were not prejudiced by the instructions given.

## C. Criminal Recklessness

[26] Gray's second argument of instructional error is that the trial court improperly refused his instruction for criminal recklessness as an inherently[6] lesser-included offense of attempted murder. However, our supreme court has consistently held that criminal recklessness is not an inherently lesser-included offense of attempted murder. *See, e.g.*, *Ellis v. State*, 736 N.E.2d 731, 734 (Ind. 2000); *Wilson v. State*, 697 N.E.2d 466, 477 (Ind. 1998); *Goolsby v. State*, 517 N.E.2d 54, 62 (Ind. 1987). We will not disregard the long-standing precedent of our supreme court, by which we are bound. *See Culbertson v. State*, 929 N.E.2d 900, 906 (Ind. Ct. App. 2010) (quoting *Horn v. Hendrickson*, 824 N.E.2d 690, 694 (Ind. Ct. App. 2005), for the proposition that "it is not this court's role to reconsider or declare invalid decisions of our supreme court."), *trans. denied*. As

---

[6] Gray does not argue that criminal recklessness was a factually lesser-included offense in this case. Indeed, the trial court ruled that it was not.

such, the trial court acted within its discretion when it denied Gray's criminal recklessness instruction.

# Conclusion

[27] We conclude that the trial court properly excluded double hearsay evidence, which was neither a present sense impression nor a statement against interest, any error in the trial court's attempted murder accomplice liability instruction did not result in reversible error, and the trial court did not abuse its discretion when it refused Gray's criminal recklessness instruction.

[28] Affirmed.

May, J., and Mathias, J., concur.