OPINION
BROWN, Judge.
Erasmo Leyva, Jr., appeals his conviction for child molesting as a class A felony.[1] Leyva raises one issue, which is whether the evidence is sufficient to sustain Leyva’s conviction for child molesting as a class A felony. We affirm.
The facts most favorable to the conviction follow. Leyva has three children, A.L., B.L., and E.[2] A.L., who was born on March 19, 1999, and B.L. lived with their mother, Leyva’s former spouse, and visited Leyva every other weekend. Leyva, who was born on June 28, 1978, lived with his wife and son E.
From April 2, 2010, to April 4, 2010, A.L. and B.L. visited Leyva to celebrate Easter and their birthdays. On April 3, 2010, Leyva, his wife, A.L., B.L., and E. were watching a movie in the family room. Leyva’s wife, E., and B.L. watched the movie while on the floor, and Leyva and A.L. watched the movie from the couch. At some point, Leyva’s wife, B.L., E., and A.L. fell asleep.
At approximately 12:30 a.m., A.L., who was wearing pajama shorts and underwear and was on her back, woke up and felt that Leyva had his hand down her pants and underwear. Leyva inserted more than one of his fingers into A.L.’s vagina, which “[k]ind of hurt,” and A.L. turned onto her side. Transcript at 38. A.L. then looked at the clock, stood up and walked into the kitchen, and then walked upstairs to use the restroom and look for a phone to call her mother. A.L. was unable to find a phone and went back downstairs. Leyva was at the bottom of the steps when A.L. returned downstairs and asked A.L. what she was doing, and A.L. said that she had gone to the bathroom. A.L. grabbed a blanket and lay down by Leyva’s wife, and Leyva lay down on the couch. When A.L. was on the floor next to Leyva’s wife, she noticed a phone on the floor but did not try to call her mother because she was scared that Leyva was watching her.
On April 4, 2010, A.L. did not say anything about Leyva’s actions because she was scared, and eventually A.L.’s mother arrived to pick up A.L. and B.L. As they were driving, A.L. told her mother that she needed to talk to her. After they arrived home, A.L. took her mother into her bedroom and told her what had happened. A.L.’s mother took A.L. to the emergency room and later to the police station. A.L. was interviewed by Julie DeJesus, a forensic interviewer at the Dr. Bill Lewis Center for Children, and examined by Michelle Ditton, the chief nursing officer and a sexual assault nurse examiner at the Fort Wayne Sexual Assault Treatment Center.
On July 29, 2010, the State charged Leyva with Count I, child molesting for performing or submitting to deviate sexual conduct with A.L. as a class A felony, and Count II, child molesting for performing or submitting to fondling or touching with A.L. as a class C felony. At trial, the jury heard testimony from, among others, A.L., Erica Flegel, a forensic scientist with the Indiana State Police Laboratory, DeJesus, Ditton, Leyva, Leyva’s wife, and A.L.’s mother. Flegel testified that male DNA was identified in A.L.’s underpants but that the quantity was insufficient to posi *701 tively identify the person. DeJesus testified regarding A.L.’s disclosure of sexual abuse and identification of Leyva. Ditton testified that A.L. had no injuries and, when asked about the frequency of injuries of victims of sexual abuse which involves penetration of the female sex organ, indicated that ninety to ninety-five percent of victims have completely normal exams.
Leyva testified that A.L. used to be his “little princess” and that “[t]he older she got the more problems came,” that over the years A.L. changed, and that “[fit’s a lot of materialism, a lot of selfishness. Just not what it used to be.” Id. at 167, 169. Leyva testified that A.L. was upset because the birthday party for A.L. and B.L. was on B.L.’s birthday and not her birthday and that during the movie A.L.’s brother took her spot, and that A.L. threw a fit, held her stomach, threw herself on the couch, and refused to watch the movie. During cross examination, A.L. indicated that she was upset that her brother had taken her spot and that she had been upset because Leyva had not purchased her the “burberry” she had wanted for her birthday. Id. at 51. Also, when asked which hand Leyva used to touch her and which fingers he inserted into her vagina, A.L. answered that she did not know. A.L. further testified that Leyva inserted more than one finger into her vagina. The jury found Leyva guilty on Counts I and II. The court merged Count II into Count I, entered judgment of conviction on Count I, and sentenced Leyva to twenty years in the Department of Correction.
The issue is whether the evidence is sufficient to sustain Leyva’s conviction. When reviewing the claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind.2003). We look only to the probative evidence supporting the verdict and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id. Ind.Code § 35-42-4-3 provides in part: “[a] person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony” and that “[h]owever, the offense is a Class A felony if ... it is committed by a person at least twenty-one (21) years of age.... ”
Leyva argues that the evidence is insufficient to support his conviction. Leyva asserts that A.L.’s testimony is incredibly dubious and not corroborated by any other evidence presented by the State, that A.L. alleged that he molested her while the entire family was sleeping in their family room, that no one heard or saw the alleged conduct, that A.L. spent the entire next day engaged in family activities with Ley-va for Easter, and that A.L.’s testimony regarding the details of the evening are completely inconsistent with that of Leyva and his wife at trial. Leyva further argues that no physical injuries to A.L. were found. Leyva also maintains that A.L. had several motives to lie about the incident, including that A.L. was upset because her birthday party was cancelled and she was forced to share a party with a sibling, and because Leyva did not “get a Blackberry for her birthday” as she expected. Appellant’s Brief at 13. Leyva argues that A.L. was also upset the night of the incident because her brother took her spot for the movie, and that she threw a fit, jumped on the couch, and refused to watch the movie. Leyva also points to the fact that A.L. could not testify as to which hand or fingers of Leyva were in her pants or vagina. The State argues that the evidence is suffi- *702 dent to sustain Leyva’s conviction, that A.L.’s testimony was not incredibly dubious, and that the jury weighed Leyva’s claims regarding A.L.’s motive to fabricate the story and rejected the alternate theory.
To the extent Leyva asserts that the incredible dubiosity rule requires reversal of his conviction, we note that the rule applies only in very narrow circumstances. See Love v. State, 761 N.E.2d 806, 810 (Ind.2002). The rule is expressed as follows:
If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant’s conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.
Id. Leyva fails to show that the testimony of A.L. was inherently contradictory. To the extent A.L.’s testimony conflicted with the testimony of Leyva or his wife or Leyva argues that A.L.’s testimony was less believable, we note that this is an issue of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. Whited v. State, 645 N.E.2d 1138, 1141 (Ind.Ct.App.1995). We cannot reweigh the evidence and judge the credibility of the witnesses. See Jones, 783 N.E.2d at 1139. Further, we cannot say that the testimony of A.L. regarding Leyva’s actions, including A.L.’s testimony that she awoke and felt Leyva insert more than one of his fingers into her vagina while Leyva’s wife, B.L., and E. slept on the floor after watching a movie, was so inherently improbable that no reasonable person could believe it. Leyva does not show how the testimony against him was somehow internally inconsistent and has not shown A.L.’s testimony to be incredibly dubious.
Based upon our review of the evidence and testimony most favorable to the conviction as set forth in the record and above, we conclude that sufficient evidence exists from which the trier of fact could find Leyva guilty beyond a reasonable doubt of child molesting as a class A felony. See Hampton v. State, 921 N.E.2d 27, 29 (Ind.Ct.App.2010) (finding that the testimony of the seven-year-old victim was not incredibly dubious and concluding that based upon the record the State presented evidence of probative value from which a reasonable jury could have found the defendant guilty of child molesting as a class A felony), reh’g denied, trans. denied; Surber v. State, 884 N.E.2d 856, 869 (Ind.Ct.App.2008) (holding that the testimony of six-year-old victim was not incredibly dubious despite some inconsistencies, and that such inconsistencies are appropriate to the circumstances presented, the age of the witness, and the passage of time between the incident and the time of her statements and testimony), trans. denied.
For the foregoing reasons, we affirm Leyva’s conviction for child molesting as a class A felony.
Affirmed.
KIRSCH, J., concurs.
BAKER, J., dissents with separate opinion.

. Ind.Code § 35-42-4-3 (Supp.2007).

. E. is identified by first name only in the record.