## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Spain,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 18, 2015<br><br>Court of Appeals Case No.<br>15A01-1502-CR-68<br><br>Appeal from the Dearborn Circuit Court<br><br>The Honorable James D. Humphrey, Judge<br><br>Trial Court Cause No. 15C01-1403-FB-13 |

**Bradford, Judge.**

## Case Summary

While incarcerated in 2014, Appellant-Defendant Christopher Spain carried out a plan by which he engaged his sister to fill a fellow inmate's prescription for painkillers, sell the medication, and put the proceeds from the sale onto Spain's jail commissary account. Appellee-Plaintiff the State of Indiana ("the State") charged Spain with Class B felony conspiracy to commit dealing in a Schedule III controlled substance and Class D felony conspiracy to commit theft. A jury found Spain guilty as charged and the trial court imposed an aggregate twenty-year sentence. On appeal, Spain argues that there is insufficient evidence to support his conviction for theft and that his sentence is inappropriate in light of the nature of the offense and his character. We affirm.

## Facts and Procedural History

On January 16, 2014, Daniel Carpenter was arrested and placed in the Dearborn County jail. Spain was also incarcerated at the Dearborn County jail at the time. On January 17, 2014, Dearborn County Detective Nicholas Beetz received information from a confidential informant that someone was planning to fill Carpenter's prescription for buprenorphine, a Schedule III controlled substance. On January 26, 2014, while Carpenter was still incarcerated, Carpenter's prescription was filled at a local pharmacy. Detective Beetz obtained video surveillance identifying Jessica Cantwell as the person who filled Carpenter's prescription. Jessica Cantwell is Spain's sister and the mother of Carpenter's child.

[3]     During his investigation, Detective Beetz reviewed phone calls made by Spain while in jail. On January 17, 2014, Spain called Cantwell and learned from Cantwell that Carpenter had been arrested and was in jail. Spain called Cantwell again on January 26, 2014 and asked her to fill the remainder of Carpenter's prescription, forty-seven buprenorphine tablets. (State's Ex. 8A) Spain then told Cantwell Carpenter's birth date and social security number. Spain also told Cantwell that the medication would cost $150 and that he wanted $500 from its sale.

[4]     On January 27, 2014, Spain called Cantwell and learned that Cantwell had sold most of the buprenorphine tablets and made nearly $300. Spain asked Cantwell to put $200 on his jail commissary account and $50 on his jail phone cards. Spain specifically told Cantwell to put the money in his account and not Carpenter's because Carpenter was indebted to the jail for breaking a TV while previously incarcerated and so any money placed in Carpenter's account would be taken. Spain called Cantwell again later the same day and Cantwell informed him that she had put $160 on Spain's commissary account and $50 on his phone card.

[5]     On February 25, 2014, Detective Beetz interviewed Spain who denied having knowledge of obtaining or selling Carpenter's medication. Approximately two hours after the interview concluded, Spain called Mary Ellen Smith and told her to tell Cantwell to say it was Carpenter who had planned the sale of the buprenorphine.

The State charged Spain with Class B felony conspiracy to commit dealing in a Schedule III controlled substance and Class D felony conspiracy to commit theft. At trial, Carpenter testified that he did not give Spain or Cantwell permission to obtain the remainder of his medication and that he did not tell Spain his birth date or social security number. Carpenter also testified that he had never broken a TV while incarcerated and was not indebted to the Dearborn County jail. A jury found Spain guilty as charged and the trial court subsequently sentenced Spain to twenty years for conspiracy to deal a controlled substance and three years for conspiracy to commit theft, to be served concurrently.

# Discussion and Decision

On appeal, Spain argues (1) that there is insufficient evidence to support his conviction for conspiracy to commit theft, and (2) that his sentence is inappropriate in light of the nature of the offense and his character.

# I. Sufficiency of Evidence

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder *could* find the elements of the crime proven beyond a

reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007) (internal quotations and citations omitted, emphases in original).

[9] In order to convict Spain of Class D felony conspiracy to commit theft the State was required to prove that Spain conspired to knowingly or intentionally exert unauthorized control over Carpenter's prescription medication with the intent to deprive Carpenter of any part of its value or use. Ind. Code § 35-42-4-2 (2014). "A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony." Ind. Code § 35-41-5-2 (2014).

[10] Spain argues that the State failed to prove the "unauthorized control" element of the crime because, he claims, the evidence suggests that Carpenter was aware of and in on the scheme to sell his medication. In support of this argument, Spain claims that there is no plausible explanation for how he learned Carpenter's date of birth and social security number other than Carpenter volunteering that information so that Spain could get the prescription filled. Carpenter testified that he did not tell Spain his date of birth or social security number. When asked how Spain discovered this information, Carpenter testified that Spain was often in his jail cell and could have found the

information on Carpenter's court documents. Spain argues that Carpenter's testimony that he was not privy to the scheme is incredibly dubious.

[11] The rule of incredible dubiosity is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Leyva v. State*, 971 N.E.2d 699, 702 (Ind. Ct. App. 2012) (quoting *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002)).

[12] Spain has failed to show that Carpenter's testimony is incredibly dubious for several reasons. First, there is circumstantial evidence which supports Carpenter's testimony that he was unaware of the scheme to sell his medication, namely that Spain told Cantwell to put all of the proceeds from the sold medication onto Spain's commissary account and none onto Carpenter's. Spain went so far as to fabricate a story about a Carpenter breaking a TV in order to justify his request to keep the money off Carpenter's account. Furthermore, despite Spain's argument to the contrary, we do not think that it "runs counter to human experience" to believe that Spain could have discovered Carpenter's personal information on court documents while visiting his room. *Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000).

[13] Essentially, Spain's argument is that Carpenter's testimony is unreliable and, as a result, this court should reweigh the evidence and reevaluate Carpenter's credibility. However, as we stated above, "[i]t is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane*, 867 N.E.2d at 146. Merely showing reason to question the credibility of a witness is not sufficient to invoke the rule of incredible dubiosity, and we decline to do so here.

## II. Appropriateness of Spain's Sentence

[14] "Ind. Appellate Rule 7(B) empowers us to independently review and revise sentences authorized by statute if, after due consideration, we find the trial court's decision inappropriate in light of the nature of the offense and the character of the offender." *Anderson v. State*, 989 N.E.2d 823, 827 (Ind. Ct. App. 2013), *trans. denied*. "An appellant bears the burden of showing both prongs of the inquiry favor revision of her sentence." *Id*. (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). "We must give 'deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions.'" *Gil v. State*, 988 N.E.2d 1231, 1237 (Ind. Ct. App. 2013) (quoting *Trainor v. State*, 950 N.E.2d 352, 355-56 (Ind. Ct. App. 2011), *trans. denied*.)

[15] Spain argues that the nature of the offense does not justify the sentence because the amount he actually received from the stolen medication, $126, was relatively insignificant. Additionally, Spain argues that because Carpenter's medical needs were taken care of while incarcerated, "the crime did not have a deleterious impact on a victim or on society in general." Appellant's Br. p. 14. It seems that Spain argues only that the nature of his theft does not justify the sentence. Spain fails to address the nature of the offense of dealing in a controlled substance. While in jail, Spain recruited his sister to help him steal and sell powerful opioid medication. Dealing drugs in this manner clearly has a significant detrimental impact on the society at large. Additionally, Carpenter's scheme led to Cantwell's arrest in relation to the instant crimes.

[16] Furthermore, Spain has provided no compelling reasons why the sentence is inappropriate in light of his character. The only tangible argument he makes in this regard is that he was raised in an environment which was inundated with drugs and he has struggled with addiction since he was a teenager. The reality is that Spain has been shown leniency by previous courts and has declined to change his behavior. Spain's criminal history began with a theft conviction in 2008 for which he was sentenced to three years of probation, the terms of which he violated in 2009. In 2009, Spain was convicted of possession of paraphernalia, sentenced to one year of probation, and again violated its terms. In 2014, Spain was convicted of two counts of Class D felony theft and Class C felony burglary, for which he was given a fourteen year sentence with five years executed and nine suspended to probation.

[17] Spain has provided no indication that he intends to reform his behavior, quite the opposite in fact. While in jail, and prior to even being sentenced for the 2014 convictions, Spain committed the instant crimes. The trial court noted during sentencing that while he was incarcerated, "[Spain] was removed from the [Jail Chemical Addictions Counseling Program] for discussions of smuggling illegal drugs into the [jail]." Tr. p. 345. The trial court also noted that in Spain's presentence interview, he stated that he had no intention to stop smoking marijuana once released from probation and he discussed ways to cheat on drug screens.

[18] For the forgoing reasons, we do not think that Spain's sentence is inappropriate in light of his offenses or character.

[19] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.