

IN THE

# Court of Appeals of Indiana

Duston Nielson,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Aug 27 2025, 9:08 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

August 27, 2025

Court of Appeals Case No.
24A-CR-2295

Appeal from the Marion Superior Court

The Honorable Marshelle Dawkins Broadwell, Judge

Trial Court Cause No.
49D07-2203-F1-7709

**Opinion by Judge Vaidik**
Judges Bailey and DeBoer concur.

**Vaidik, Judge.**

## Case Summary

[1] Duston Nielson appeals his convictions for Level 1 felony child molesting and Level 4 felony child molesting and his designation as a credit-restricted felon, raising several issues. Finding no reversible error, we affirm. In doing so, however, we reject the State's argument that Nielson invited error regarding a jury instruction. The invited-error doctrine applies only when a party challenging a trial-court action affirmatively requested the action as part of a deliberate, well-informed trial strategy. Here, Nielson's attorney didn't ask the trial court to give the challenged jury instruction; he only explained why he believed he didn't have a meritorious objection.

## Facts and Procedural History

[2] Nielson's daughter, D.N., was born in 2008. After Nielson and D.N.'s mother separated, D.N.'s mother had primary custody and D.N. spent every other weekend with Nielson. Nielson lived with his wife and four children. This arrangement lasted many years, until December 2021, when D.N. told her mother that Nielson had sexually abused her several years earlier. D.N.'s mother made a report to police. After an investigation, the State charged Nielson with Level 1 felony child molesting ("other sexual conduct"), four counts of Level 4 felony child molesting ("fondling or touching"), and Level 6 felony criminal confinement.

[3]     A jury trial was held in July 2024. D.N., then 15, testified that Nielson molested her "every time" she went to his house between the ages of six and nine. Tr. Vol. III p. 52. She testified about several incidents in particular. On her sixth birthday and twice more when she was six, she and Nielson were under a blanket on a couch in Nielson's living room, and Nielson touched her breast and the outside of her vagina with his hand. When she was seven-and-a-half or eight-and-a-half years old, Nielson lifted her out of her bed, carried her into his bedroom, locked the door, touched her breast and vagina with his hand, and put a finger "inside" her "vagina." *Id.* at 32-33. When D.N. tried to leave, Nielson picked her up and brought her back to his room. The next night, Nielson again touched her breast and the outside of her vagina while the two were under a blanket on a couch. During the last incident, when D.N. was nine, Nielson touched D.N.'s breast. When asked why she waited so long to disclose the abuse, D.N. said Nielson told her that if she did, he would take her away from her mother. D.N. testified that she did some internet research when she was 13 and learned that Nielson wouldn't be able to do that, so she told her mother about the abuse.

[4]     D.N.'s mother testified that D.N. was sick, scared, and nervous when she went to Nielson's house. She would vomit, have diarrhea, and pick her nails until they bled, and she struggled at school. When D.N. disclosed the abuse, she was crying and shaking and said, "Mom, I don't want to go back," "I never had a dad," and "The one man that [was] supposed to protect me hurt me my entire

life." *Id.* at 13. After D.N. disclosed the abuse and stopped going to Nielson's house, her health improved, as did her grades.

[5] Nielson testified in his own defense and denied ever sexually abusing D.N. He said D.N. was never scared or nervous around him. He knew D.N. had gastrointestinal issues but wasn't aware of them being worse when she was with him.

[6] The trial court instructed the jury that "other sexual conduct"—the basis for the Level 1 felony charge—is defined as "an act involving: a sex organ of one person and the mouth or anus of another person or the penetration of the sex organ or anus of a person by an object." Appellant's App. Vol. II p. 96. At the State's request, and with no objection from Nielson, the court also gave the jury the following instruction on penetration: "The 'slightest penetration' of the female sex organ, including penetration of the external genitalia, is sufficient to sustain a conviction for child molestation." *Id.* at 124.

[7] The State also asked the court to have the jury make special findings if it found Nielson guilty of Level 1 felony child molesting. Specifically, the State wanted the jury to decide whether the offense involved "other sexual conduct" and whether, at the time of the offense, Nielson was at least 21 and D.N. was under 12. These facts would make Nielson a "credit restricted felon," *see* Ind. Code § 35-31.5-2-72(1), which would reduce the amount of good-time credit Nielson could earn while serving his sentence, *see* I.C. § 35-50-6-4. The existence of "other sexual conduct" and Nielson being at least 21 were included in the Level

1 felony as charged. Appellant's App. Vol. II p. 82. But D.N. being under 12 was not—consistent with the child-molesting statute, the charge only required the State to prove that D.N. was under 14. *See id.*; I.C. § 35-42-4-3.

[8] Nielson didn't object to the jury being asked to make the special findings, but he argued that the trial should be bifurcated for this purpose, so as not to confuse the jury or overemphasize D.N.'s age during the initial deliberations. Tr. Vol. II p. 213; Tr. Vol. III pp. 4-6, 88-89. He dropped that request, however, after seeing the "Specific Findings" form the court drafted. Tr. Vol. III pp. 90-93. The form provided:

**COUNT I**

Specific Findings
The State proved Count 1 was committed by a person of at least 21 years of age
against a person less than 12 years of age.

We, the Jury, having found the Defendant, DUSTON NIELSON, GUILTY of Count 1—Child Molesting as a Level 1 Felony further FIND beyond a reasonable doubt that the act or acts of molestation:

1. involved other sexual conduct

2. The offense was committed by a person of at least twenty-one (21) years of age, and

3. The victim was less than twelve (12) years of age.

Appellant's App. Vol. II p. 136. The court gave this form to the jury along with the verdict forms.

[9] The jury found Nielson guilty of Level 1 felony child molesting and one count of Level 4 felony child molesting but not guilty on the other three counts of Level 4 felony child molesting and the criminal-confinement count. As to the Level 1 felony, the jury also used the "Specific Findings" form to find that the offense involved "other sexual conduct" and that at the time of the offense Nielson was at least 21 and D.N. was under 12.

[10] The trial court sentenced Nielson to 22 years in the Department of Correction. It also found him to be a credit-restricted felon, stating, "There was a finding that was made by the jury concerning the age of the defendant and the age of the victim in this matter. So it's my finding that the defendant is a credit restricted felon." Tr. Vol. III pp. 160-61. Nielson didn't object to this determination or to the procedure the court used to reach it.

[11] Nielson now appeals.

## Discussion and Decision

### I. The trial court didn't commit fundamental error by giving the "slightest penetration" jury instruction

[12] Nielson contends that the trial court shouldn't have instructed the jury that "[t]he 'slightest penetration' of the female sex organ, including penetration of the external genitalia, is sufficient to sustain a conviction for child molestation." He acknowledges that he didn't object to this instruction, that he therefore waived the issue for appeal, and that he must show fundamental error. *See C.S. v. State*, 131 N.E.3d 592, 595 (Ind. 2019). An error is fundamental if it "made a

fair trial impossible" or if it "constituted a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Id.* This is a "daunting" standard that applies only when there is an error so egregious that the trial court should have taken action sua sponte. *Id.*

[13] We first address the State's argument that Nielson invited any error in this regard and is therefore barred from claiming fundamental error. It is true that "[t]he invited-error doctrine generally precludes a party from obtaining appellate relief for his own errors, even if those errors were fundamental." *Miller v. State*, 188 N.E.3d 871, 874-75 (Ind. 2022). But the doctrine is narrow:

> A party invites an error if it was part of a deliberate, well-informed trial strategy. This means there must be evidence of counsel's strategic maneuvering at trial to establish invited error. Mere neglect or the failure to object, standing alone, is simply not enough. And when there is no evidence of counsel's strategic maneuvering, we are reluctant to find invited error.

*Id.* at 875 (citation modified). Here, when the State asked for the challenged instruction and another instruction, Nielson's attorney said, "I agree that those are nonpattern instructions that seem to be standard in every sexual assault case that I have been on. So I think that they're de facto patterns that the Indiana Supreme Court has approved of." Tr. Vol. III p. 62. This wasn't a strategic request for the instruction. This was counsel explaining why he believed he didn't have a meritorious objection. Because Nielson didn't invite the alleged error, we will address his fundamental-error argument.

[14] Nielson notes that the language of the instruction was taken from case law addressing sufficiency-of-the-evidence claims about penetration, *see, e.g.*, *Boggs v. State*, 104 N.E.3d 1287, 1288 (Ind. 2018), and that our Supreme Court has held that appellate sufficiency review will "rarely, if ever," be an appropriate basis for a jury instruction, *Keller v. State*, 47 N.E.3d 1205, 1209 (Ind. 2016). Nielson argues that inclusion of the phrase "including penetration of the external genitalia" restricted the jury's discretion by emphasizing a specific set of facts. He also asserts that the phrase "sufficient to sustain" is an appellate concept that was irrelevant to the jury's role as the finder of fact and was likely to confuse or mislead the jury.

[15] But any problems with the instruction weren't so egregious that they rose to the level of fundamental error. First, the instruction was a correct statement of Indiana law. *See Boggs*, 104 N.E.3d at 1288 (holding that "proof of the 'slightest penetration' of the female sex organ, including penetration of the external genitalia, is sufficient to sustain a conviction for child molestation"). Second, "There is no blanket prohibition against the use of appellate decision language in jury instructions." *Munford v. State*, 923 N.E.2d 11, 15 (Ind. Ct. App. 2010). Third, and most importantly, this wasn't a case where the jury had to decide whether there was "slight penetration" or "penetration of the external genitalia." *Cf. Austin v. State*, 201 N.E.3d 1184 (Ind. Ct. App. 2022) (holding that penetration wasn't proven where the victim testified only that the defendant "used his 'whole hand' to rub 'up and down' on the 'outside' of her 'private part' and that it made her feel 'tingly'"). D.N. testified that Nielson put

his finger "inside" her vagina, which would clearly constitute penetration. The jury only had to decide whether it believed D.N. While giving the instruction was unnecessary, its inclusion wasn't fundamental error.

## II. Nielson waived his arguments about the "Specific Findings" form and in any event hasn't shown reversible error

Next, Nielson argues that the trial court shouldn't have given the jury the "Specific Findings" form, which addressed facts that would make a person a credit-restricted felon. He cites Indiana Code section 35-38-1-7.8(a), which provides, "At the time of sentencing, a court shall determine whether a person is a credit restricted felon (as defined in IC 35-31.5-2-72)." By giving the jury the "Specific Findings" form, Nielson claims, the court "abdicated" this responsibility and improperly left the determination to the jury. Appellant's Br. pp. 16-17. Nielson didn't make this argument to the trial court and therefore waived it for purposes of appeal. *See, e.g.*, *Means v. State*, 201 N.E.3d 1158, 1168 (Ind. 2023).

Waiver notwithstanding, Nielson hasn't shown any error. Through the "Specific Findings" form, the jury only made factual findings that Nielson's Level 1 felony offense involved "other sexual conduct" and that, at the time of the offense, Nielson was at least 21 and D.N. was under 12. At the sentencing hearing, the trial court determined Nielson is a credit-restricted felon. While the court based that conclusion on the jury's findings, the fact remains that the court made the ultimate determination.

[18] Nielson offers a second reason why the court shouldn't have given the form to the jury. He contends that doing so "tainted the jury's deliberations" on the underlying charges. Appellant's Br. p. 19. Nielson also waived this argument. While he initially asked the trial court to bifurcate the trial and have the jury consider the special findings in a second phase, he dropped that request when he saw the form the court had drafted.

[19] Waiver notwithstanding, Nielson hasn't shown any error. He argues that the form "unnecessarily emphasized" the Level 1 felony charge over the other charges, *id.* at 20, but he doesn't explain how. He also argues that the form "unnecessarily emphasized the age of D.N., the age of Nielson, and the existence of sexual conduct." *Id.* But this was a prosecution for child molesting. As with any such prosecution, the age of the victim, the age of the defendant, and the existence of sexual conduct were front and center throughout the trial. Indeed, the Level 1 felony charge required the jury to determine if D.N. was under 14, if Nielson was at least 21, and if Nielson committed "other sexual conduct." The only additional fact included in the "Specific Findings" form was whether D.N. was under 12, not just under 14. We fail to see how Nielson was prejudiced by that minor variation, especially given D.N.'s testimony that the last molestation occurred years before she was 12 or 14.

[20] Giving the jury the "Specific Findings" form was not reversible error.

## III. The evidence is sufficient to support the convictions

Finally, Nielson contends the evidence is insufficient to support his convictions. He doesn't dispute that D.N.'s testimony, if believed, would prove the charges. Rather, he asks us to disregard D.N.'s testimony under the doctrine of incredible dubiosity. Under this doctrine, we can impinge upon a fact-finder's responsibility to judge the credibility of the witnesses when "the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. The doctrine "requires that there be: 1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015). Application of this rule is rare. *Leyva v. State*, 971 N.E.2d 699, 702 (Ind. Ct. App. 2012), *trans. denied*.

While D.N. was the sole testifying witness as to the molestation, Nielson hasn't shown that her testimony was inherently contradictory, equivocal, or the result of coercion. He points out possible discrepancies on a few details, e.g., whether everyone else in the house was asleep when the molestation occurred, whether she was seven-and-a-half or eight-and-a-half when Nielson penetrated her vagina with his finger, whether Nielson said anything before, during, or after each act of molestation, and what Nielson told her about video cameras in the house. He also challenges as unbelievable other parts of D.N.'s testimony, namely, that no one in the house witnessed or became aware of the molestation over the course of three years, that her toddler sister was often awake after

everyone else in the house had gone to bed, and that Nielson didn't speak during any of the molestation. But these aspects of D.N.'s testimony didn't make it so "inherently improbable that no reasonable person could believe it." They were just factors for the jury to consider in evaluating D.N.'s credibility. And the jury obviously thought hard about D.N.'s credibility, as it found Nielson not guilty on four of the six counts.

[23] In any event, application of the incredible-dubiosity doctrine also requires "a complete absence of circumstantial evidence," which didn't exist here. D.N.'s mother testified that D.N. was sick, scared, and nervous when she had to go to Nielson's house; that D.N. would vomit, have diarrhea, and pick her nails until they bled and that she struggled at school; that D.N. was crying and shaking when she disclosed the abuse; and that after D.N. disclosed the abuse and stopped going to Nielson's house, both her health and her grades improved. All this is circumstantial evidence supporting Nielson's convictions.

[24] For these reasons, Nielson's incredible-dubiosity argument fails.

[25] Affirmed.


Bailey, J., and DeBoer, J., concur.


ATTORNEY FOR APPELLANT

Joshua Vincent
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

Jennifer Anwarzai
Deputy Attorney General
Indianapolis, Indiana